## CIRCUIT COURT OF FAIRFAX COUNTY

Sandra Lynn Salama

v.

Commonwealth of Virginia

May 8, 1998

Case No. L166951

BY JUDGE STANLEY P. KLEIN

This cause is before the Court on Petitioner Sandra Lynn Salama's Petition for a Restricted Permit to Operate a Motor Vehicle. Salama argues that she should receive credit for the period of time her license was revoked before being adjudicated an habitual offender pursuant to Va. Code § 46.2-360. For the reasons set forth below, the Court agrees that Salama is entitled to the credit she seeks, and her petition is granted.

### I. *Background*

On September 18, 1990, Salama was convicted for driving under the influence in violation of Va. Code § 18.2-266. Salama was again convicted for the same offense on November 2, 1992. At that time, Salama's license was suspended for three years. Pursuant to the order suspending Salama's license for three years, the court granted restricted driving privileges commencing July 16, 1993, until the expiration of the suspension period. On August 3, 1993, the Commissioner of the Department of Motor Vehicles ("Commissioner") revoked her license in accordance with Va. Code § 46.2-391(A), effective that date. However, pursuant to that code section, the Commissioner also granted her restricted driving privileges for the balance of the period of the administrative suspension. On February 19, 1997, Salama was convicted of driving while her license was suspended. This conviction constituted the third predicate offense under Virginia's habitual offender

statute, and Salama was accordingly determined to be an habitual offender on March 31, 1997. On November 24, 1997, Salama requested that this Court grant her a restricted license to operate a motor vehicle, arguing that, pursuant to Va. Code § 46.2-360, she is entitled to a credit for the time her license was administratively revoked prior to being determined an habitual offender. After a hearing, both Salama and the Commonwealth of Virginia were asked to submit briefs in support of their respective positions, and the Court took the matter under advisement.

## II. *Habitual Offender Act*

The Habitual Offender Act, Va. Code §§ 46.2-351 *et seq.*, provides the framework for determining when an individual may be declared an habitual offender.

The statute authorizes the revocation of driving privileges where an individual commits three or more of the predicate offenses outlined in Va. Code § 46.2-351 within a ten-year period. The period of revocation is ten years. Va. Code § 46.2-356. Generally, a person may petition a court for full restoration of driving privileges after three[1] or five[2] years have elapsed from the date the individual was determined to be an habitual offender. However, where one or more of the predicate offenses is for driving under the influence of intoxicants or drugs in violation of Va. Code § 18.2-266 or Va. Code § 46.2-341.24(A), the habitual offender may also petition the court for a restricted driver's license after the expiration of three years from the date of adjudication. Va. Code § 46.2-360(2).

Moreover, Va. Code § 46.2-360 provides that:

> In the computation of the five- and three-year periods under … this section, such person shall be given credit for any period his driver's license was administratively revoked under § 46.2-391 prior to the final order or notification by the Commissioner of the habitual offender determination.

Va. Code § 46.2-391(A) requires the Commissioner of the Department of Motor Vehicles to revoke an individual's license for three years where that

---

[1] Va. Code §§ 46.2-358 and 46.2-361 (where none of the predicate offenses was a conviction for DWI).

[2] Va. Code § 46.2-360(1) (where one or more of the predicate offenses was a conviction for DWI).

person has been twice convicted for driving under the influence. Under Va. Code § 46.2-391(A), the Commissioner must revoke the driver's license for a period of ten years if the individual has three convictions for driving under the influence.

Salama argues that the statutory directive in Va. Code § 46.2-360 is clear that a person declared to be an habitual offender, based wholly or in part on the offense of driving under the influence, is entitled to credit for any period her license was administratively revoked under Va. Code § 46.2-391 prior to the habitual offender determination. Accordingly, Salama contends that she must be awarded credit for the entire period her license was administratively revoked as a result of her second DWI conviction.

In support of her position, Salama asserts that because the statutory language in Va. Code § 46.2-360 is plain, this Court is required to follow the legislative directive contained therein. Even if the Court were to determine that the statutory language is ambiguous, Salama argues that the code section must be strictly interpreted in her favor, because a driver's license is a protected property interest, the deprivation of which constitutes a forfeiture, citing *Mackey v. Montrym*, 443 U.S. 1 (1979), and *United States v. One 1950-51 Ford Van*, 118 F. Supp. 310 (E.D. Va. 1954).

The Commonwealth responds that Salama is not entitled to any credit under Va. Code § 46.2-360 because her license was not "administratively revoked" pursuant to Va. Code § 46.2-391. In support of its argument, the Commonwealth notes that Salama was granted restricted driving privileges during the period her license was suspended by the Commissioner. Relying on the last sentence in Va. Code § 46.2-391(A), which provides that "if the Commissioner has received a copy of a court order as provided in subsection E of § 18.2-271.1, he shall proceed as provided in the order of the court," the Commonwealth argues that her license was not administratively revoked. As the statute makes a distinction between revocation pursuant to a court order and outright revocation under the first sentence of that subsection, the Commonwealth asserts that the two should be treated differently.

The Commonwealth further argues that credit under § 46.2-360 should only be given when the revocation pursuant to Va. Code § 46.2-391 was for the third predicate offense and is therefore ongoing at the time the individual is determined to be an habitual offender.[3] Otherwise, the Commonwealth asserts, an individual whose license was revoked under § 46.2-391(A) for a

---

[3] The Court raised this issue *sua sponte* at oral argument, at which point the Commonwealth articulated its proposed interpretation of the statutory scheme in light of the concerns expressed by the Court.

second DWI conviction could immediately petition for restricted driving privileges as soon as she was declared an habitual offender; whereas a person convicted of only one count of driving under the influence would have to wait at least three years before petitioning a court for those privileges. Such a result, the Commonwealth contends, would constitute a manifest absurdity. If, however, a narrower interpretation of Va. Code § 46.2-360 were adopted, a far more equitable outcome would be achieved because the credit would only be granted for administrative revocations which arise from the third predicate offense when the driver would necessarily already qualify as an habitual offender. The Commonwealth contends that only under these limited circumstances should a driver receive the credit articulated in Va. Code § 46.2-360. After considering the binding decisions by Virginia's appellate courts, the Court disagrees with the Commonwealth.

### III. *Administrative Revocation Pursuant to Virginia Code § 46.2-391*

Virginia. Code § 46.2-391(A) mandates that the Virginia Department of Motor Vehicles ("DMV") revoke for three years the license of a person convicted of a second DWI. Although the DMV is required to grant *restricted privileges* pursuant to Va. Code § 18.2-271.1 if such privileges are granted by the convicting court, the license *revocation* under § 28.1-271 remains in effect nonetheless. The General Assembly's intent that the issuance of a restricted license not negate either a court-ordered or administrative revocation is evidenced by the limitation contained in Va. Code § 18.2-271.1(E) that no restricted license "be issued *during the first four months* of a revocation imposed pursuant to subsection B of § 18.2-271 of subsection A of § 46.2-391 for a second offense ... ." (Emphasis supplied.)

In addition, the Court finds that there is no difference between a *revocation* under § 46.2-391(A) and a *suspension* under that code section. While required by that section to revoke Salama's driving privileges, the Commissioner suspended Salama's license for the applicable period. In fact, the Commissioner's interchangeable use of the terms "revocation" and "suspension" is entirely consistent with Virginia law. Virginia Code § 18.2-271 recognizes the lack of any distinction between those terms in this context:

If a person is (i) tried on a process alleging a second offense of violating § 18.2-266 ... such person's license to operate a motor vehicle, engine or train shall be *revoked* for a period of three years from

the date of the judgment of conviction. *This suspension period* shall be in addition to … .

Va. Code § 18.2-271(B). (Emphasis supplied.) Therefore, this Court holds that Salama's license was administratively revoked on August 3, 1993, in accordance with Va. Code § 46.2-391.

## IV. *Interpretation of Virginia Code § 46.2-360*

The Court declines to adopt the Commonwealth's interpretation of Va. Code § 46.2-360. When the language of a statute is plain and unambiguous, a court "may look only to the words of the statute to determine its meaning." *Caprio v. Commonwealth*, 254 Va. 507, 511 (1997).

> While in the construction of statutes, the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislation has used words of plain and definite import, the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Caprio*, 254 Va. at 511-12 (quoting *Barr v. Town & Country Properties*, 240 Va. 292, 295 (1990)). *See also, Catron v. State Farm Mut. Auto. Ins. Co.*, 255 Va. 31 (1998). "[C]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words where the intention is clear. *Supinger v. Stakes*, 255 Va. 198 (1988) (quoting *Anderson v. Commonwealth*, 182 Va. 560, 566 (1944)). Virginia Code § 46.2-360 clearly states that a person determined to be an habitual offender based in part and dependent on a conviction as set forth in § 46.2-351(1)(b) *shall* receive credit *for any* period his license was administratively revoked *pursuant to Va. Code § 46.2-391* prior to being adjudicated an habitual offender. Although this Court is not unmindful of the potential anomaly the statute may create by conferring a credit to individuals who potentially represent a greater threat on the highways because of their prior disposition to repeatedly drink and drive, it is not for this Court to alter the plain language of the statute, unless the interpretation required by the plain language utilized by the General Assembly would constitute a "manifest absurdity." Based on

binding judicial precedent, this Court cannot conclude as a matter of law that the plain language of the statute creates such a manifest absurdity.

The Virginia Court of Appeals has explicitly ruled that the disparate treatment afforded alcohol and drug addicts compared with other habitual offenders has a sound policy basis. *Salama v. Commonwealth*, 8 Va. App. 320 (1989). In making a distinction between persons suffering from addictions and other habitual offenders, the Court of Appeals in *Salama* stated that:

> The distinction made in [the Habitual Offender Act] between alcoholics or drug addicts and other drivers is plainly justifiable. It distinguishes between a class of people who have suffered from the debilitative diseases of alcohol or drug addiction, but who have been cured, and a class of people who have violated the laws of the Commonwealth for no apparent reason. This statutory classification is based on the rationale that the unlawful acts of the alcoholics or drug addicts will stop when these individuals are cured of their chemical dependence. The rationale does not apply to individuals who, for no apparent reason, repeatedly and intentionally violate the law.

*Salama*, 8 Va. App. at 324.

Moreover, in enacting the habitual offender statutory scheme, the General Assembly granted judges the discretion to deny restoration of driving privileges even when a petitioner has satisfied the statutory prerequisites:

> On such petition, and for good cause shown, the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth, on whatever conditions the court may prescribe, subject to other provisions of law relating to the issuance of driver's licenses.

Virginia Code § 46.2-360. Such discretion further allows a court to ameliorate the potential anomalous effects of the statutory scheme. As the Court of Appeals has opined that a rational basis exists for the distinction drawn in § 46.2-360 and the statute grants the trial courts discretion in considering the merits of petitions for restoration of privileges, this Court cannot conclude that the interpretation of § 46.2-360 required by the words utilized by the General Assembly rises to the level of a "manifest absurdity." *Caprio*, 254 Va. at 511-12. Accordingly, this Court holds that Salama is entitled to credit

for the period her license was administratively revoked pursuant to Va. Code § 46.2-391 for her second DWI conviction.[4]

Based on Salama's DMV report, her license was administratively revoked from August 3, 1993, until November 2, 1995, a period of twenty-seven months. When this twenty-seven-month period is added to the time commencing March 21, 1997 (the date she was determined to be an habitual offender by DMV), Salama has met the three-year minimum threshold articulated in Va. Code § 46.2-360(2) for a restricted driver's license. Having considered the entirety of the Virginia Alcohol Safety Action Program ("ASAP") report and the testimony presented at the hearing, the Court will exercise its discretion to grant Salama a restricted license to drive to and from work, for work-related purposes if a necessary incident to her employment, and to and from the ASAP program, on the condition that Salama maintains absolute abstinence from alcohol.

---

[4] It should be noted that members of the Virginia General Assembly apparently share the concern over the statutory scheme as it presently stands. On January 22, 1998, a House Bill was introduced which would amend the credit provision in Va. Code § 46.2-360 to allow an administrative credit *only* for a revocation following a third DWI conviction pursuant to Va. Code § 46.2-391(B). H.B. 672, 1998 Session. The proposed bill was incorporated into House Bill No. 634. Although House Bill No. 634 was approved by the Governor on April 16, 1998, the final full text version of the Bill did not contain the changes articulated in House Bill No. 672.